UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONEL SANCHEZ LAGUNAS,<br><br>Petitioner,<br><br>v.<br><br>FACILITY ADMINISTRATOR et al.,<br><br>Respondents. | Case No. 5:26-cv-00507-MCS-AGR<br><br>**ORDER RE: MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 5)** |

Petitioner Leonel Sanchez Lagunas brings this action for a writ of habeas corpus. (Pet., ECF No. 1.) Petitioner filed a motion for a preliminary injunction. (Mot., ECF No. 5.) Respondents Facility Administrator of Adelanto Immigration and Customs Enforcement ("ICE") Processing Center; Jaime Rios, in his official capacity as Field Office Director of the ICE Los Angeles Office; Todd Lyons, in his official capacity as Acting Director of ICE; Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security ("DHS"); and Pamela Bondi, in her official capacity as Attorney General of the United States, filed an opposition. (Opp'n, ECF No. 9.) Petitioner filed a reply. (Reply, ECF No. 10.) The Court heard the motion on March 9, 2026. (Mins., ECF No. 12.)

1

## I. BACKGROUND

According to the petition and motion, Petitioner is a 56-year-old citizen of Mexico who has resided in the United States since he was 10 years old. (Pet. ¶¶ 6, 14, ECF No. 1.) As a young adult, Petitioner received multiple criminal convictions. (*Id.* ¶ 20.) In January 2016, Petitioner was attacked and beaten by a group of men. (*Id.* ¶ 21.) A few months later, Petitioner saw a group of individuals whom he believed to be the same people who had attacked him. (*Id.* ¶ 22.) To scare them away, he waved a gardening machete and a firearm at the group. (*Id.*) He was arrested and convicted of assault with a semiautomatic firearm and several related charges, including possession of a firearm by a felon. (*Id.*; *see also* Velasquez Decl. ¶¶ 3–7, ECF No. 9-1.)

After completing his criminal sentence, Petitioner was transferred to ICE custody in December 2019 and ordered removed in October 2020. (Pet. ¶ 28.) Petitioner was released on bond by an immigration judge in September 2021. (*Id.* ¶ 29.) In the summer of 2024, Petitioner applied for travel documents to Mexico at ICE's request and obtained a passport. (*Id.* ¶ 33.) Petitioner's Mexican passport remains valid and unexpired, and Mexico is accepting individuals who are removed from the United States. (*Id.* ¶¶ 33, 38.) An ICE deportation officer avers that ICE intends to remove Petitioner to Mexico and has not made a request for Petitioner's removal to a third country. (Velasquez Decl. ¶ 24.)

On June 3, 2025, ICE re-detained Petitioner, and since then, he has been in detention at Adelanto ICE Processing Center. (Pet. ¶ 34.) On December 2, 2025, an immigration judge denied Petitioner bond, concluding that DHS had established by clear and convincing evidence that Petitioner was both a flight risk and a danger to the community. (*Id.* ¶ 35; *see also* Opp'n Ex. 3, ECF No. 9-3.)[1]

---

[1] The exhibits Respondents attached to their brief are not authenticated. Fed. R. Evid. 901; *see* C.D. Cal. R. 7-6. The Court considers them solely for the purpose of argument.

2

On February 13, 2026, one week after Petitioner filed a motion for a preliminary injunction in this Court, he filed a petition before the U.S. Court of Appeals for the Ninth Circuit for review of the Board of Immigration Appeals' denial of his motion to reopen his removal proceedings. (Velasquez Decl. ¶ 22.) On February 17, 2026, the Ninth Circuit granted Petitioner a temporary stay of removal. (*Id.* ¶ 23.) At the hearing on the preliminary injunction motion, counsel for Petitioner confirmed that the Ninth Circuit's temporary stay currently remains in effect.

Petitioner raises three grounds for habeas relief: (1) unconstitutionally indefinite detention with no significant likelihood of removal in the reasonably foreseeable future, in violation of the Fifth Amendment's Due Process Clause; (2) unconstitutionally inadequate process regarding third-country removal, in violation of the Fifth Amendment's Due Process Clause; and (3) punitive banishment to a third country, in violation of the Fifth Amendment's Due Process Clause. (Pet. ¶¶ 66–78.) Petitioner seeks a preliminary injunction requiring his immediate release, and enjoining Respondents from removing him to a third country without providing Petitioner with meaningful notice and a minimum of 45 days to assert a fear-based claim. (Mot. 1; *see also* Proposed Order, ECF No. 5-11.)

II. **LEGAL STANDARD**

The standards governing temporary restraining orders and preliminary injunctions are essentially the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The Ninth Circuit also employs a "version of the sliding

scale approach" where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, an injunction may issue if the plaintiff shows that serious questions go to the merits, the balance of hardships tips sharply toward the plaintiff, the plaintiff is likely to suffer irreparable injury, and an injunction is in the public interest. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

## III. DISCUSSION

The Court has jurisdiction to consider Petitioner's claims under 28 U.S.C. § 2241. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) ("The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention.").

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

The Immigration and Nationality Act governs detention and release of noncitizens during and following removal proceedings. *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021). Once an alien is ordered removed, DHS must remove the alien within a 90-day removal period, during which detention is mandatory. *Id.* at 528 (construing 8 U.S.C. § 1231(a)(1)); 8 U.S.C. § 1231(a)(2). Certain categories of aliens who have been ordered removed "may be detained" after the removal period lapses. 8 U.S.C. § 1231(a)(6). The Constitution implicitly limits DHS's discretion to detain an alien in the post-removal period to "'a period reasonably necessary to bring about that alien's removal from the United States,'" which "is presumptively six months."

*Johnson*, 594 U.S. at 529 (quoting *Zadvydas*, 533 U.S. at 689). After that six-month period lapses, "if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing or release the alien." *Id.* at 529 (quoting *Zadvydas*, 533 U.S. at 701). The mere fact that an alien has been held for more than six months does not itself necessitate release; instead, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Here, Petitioner is unlikely to succeed on the merits of his claims because he has not shown "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Johnson*, 594 U.S. at 529 (quoting *Zadvydas*, 533 U.S. at 701). Petitioner concedes that he has valid travel documents to Mexico, that Respondents have successfully removed others to Mexico, and that the only barrier to his removal is the temporary stay of removal granted by the Ninth Circuit while his petition for review is pending. (*See* Mot. 6–7; Reply 5–6.) However, Petitioner contends that Respondents' failure to remove him prior to the Ninth Circuit's temporary stay of removal on February 19, along with the indefinite length of time it may take for his petition for review to be resolved by the Ninth Circuit, render his removal unlikely in the reasonably foreseeable future. (*See* Reply 6–7.)

The Court disagrees. First, the Court addresses Petitioner's argument that ICE failed to remove Petitioner despite having the opportunity to do so prior to the Ninth Circuit's temporary stay. "The mere passage of time . . . [is] not enough for a petitioner to satisfy his burden to show that there is no good reason to believe that his removal is reasonably likely in the foreseeable future." *Mosso v. Cantu*, No. CV-25-04257-PHX-MTL (DMF), 2026 U.S. Dist. LEXIS 45215, at *5 (D. Ariz. Mar. 5, 2026) (internal quotation marks omitted); *see also Muthalib v. Kelly*, No. SA CV 16-02186-KS, 2017 U.S. Dist. LEXIS 59967, at *8 (C.D. Cal. Apr. 19, 2017) ("Federal courts have held that a habeas petitioner's assertion as to the unforeseeability of removal, supported only

1 by the mere passage of time, is insufficient to meet the petitioner's burden to
2 demonstrate no significant likelihood of removal under the Supreme Court's holding in
3 *Zadvydas*." (cleaned up)). That ICE did not effectuate Petitioner's removal during the
4 first six months of his detention does not mean that Petitioner is in fact unlikely to be
5 removed. ICE's delay cannot be attributed to an inability to procure travel documents
6 for Petitioner or Mexico's unwillingness to accept Petitioner. (*See* Pet. ¶¶ 33, 38.) Aside
7 from this delay and the Ninth Circuit's temporary stay, Petitioner provides no other
8 basis to conclude that his removal is not reasonably likely in the foreseeable future.
9 Absent such an initial showing by Petitioner, *Zadvydas* relief is inappropriate. *See, e.g.*,
10 *Nersessian v. Noem*, No. 5:26-cv-00636-SB-DTB, 2026 U.S. Dist. LEXIS 37277, at *5
11 (C.D. Cal. Feb. 19, 2026) (concluding Petitioner failed to satisfy *Zadvydas* burden
12 where he offered "only conclusory assertions about Iran's willingness to accept him or
13 the likelihood of issuance of travel documents"); *Tashchian v. Warden of Golden State*
14 *Annex Det. Facility*, No. 1:25-cv-00753-SKO (HC), 2025 U.S. Dist. LEXIS 184660, at
15 *5 (E.D. Cal. Sept. 19, 2025) (denying *Zadvydas* claim where travel document
16 application was pending and petitioner had "not established that he is unremovable
17 because the destination country will not accept him or his removal is barred by our own
18 laws" (internal quotation marks omitted)).

19       Second, the uncertainty of when the Ninth Circuit will resolve Petitioner's
20 petition for review does not mean his removal is not reasonably likely in the foreseeable
21 future. Although Petitioner's "detention lacks a certain end date, . . . this uncertainty
22 alone does not render his detention *indefinite* in the sense that the Supreme Court found
23 constitutionally problematic in *Zadvydas*." *Prieto-Romero v. Clark*, 534 F.3d 1053,
24 1063 (9th Cir. 2008). Petitioner's removal has been delayed by his own pursuit of
25 judicial review of his removal order, not by any external impediments to his removal.
26 Once the stay of removal lifts, there will be no barriers to his removal. Accordingly,
27 Petitioner "foreseeably remains *capable* of being removed—even if it has not yet finally
28 been determined that he *should be* removed." *Id.* at 1065; *see also Lawrence v.*

1  *Gonzales*, 446 F.3d 221, 227 (1st Cir. 2006) ("Lawrence's continued detention here
2  occurred pursuant to his own procuring of stays incident to his legal challenges to the
3  removal order; it is beyond dispute that this period of time [of detention] was necessary
4  to bring about Lawrence's removal . . . ."); *Martinez v. LaRose*, 968 F.3d 555, 565 (6th
5  Cir. 2020) ("If Melara does not prevail in his pending actions before this court and the
6  BIA, nothing should impede the government from removing him to El Salvador. If
7  Melara does prevail before this court or the BIA, he may refile his § 2241 petition and
8  argue at that point that there is no significant likelihood of removal in the reasonably
9  foreseeable future." (footnote omitted)).

Under these circumstances, Petitioner has failed to meet his burden of showing that there is no significant likelihood of his removal in the reasonably foreseeable future. *See, e.g.*, *Barrientos v. U.S. Att'y Gen.*, No. 1:25-cv-00258-SKO (HC), 2025 U.S. Dist. LEXIS 149561, at *8 (E.D. Cal. Aug. 4, 2025) ("Petitioner's removal would have been accomplished long ago but for the automatic stay issued when he appealed the denial of his dual citizenship claim to the Ninth Circuit. . . . There is no indication that the appeal will not be decided in the near term, and once the appeal is decided, no obstacles will be in the path of removing Petitioner to Mexico."), *R. & R. adopted*, 2025 U.S. Dist. LEXIS 218246 (E.D. Cal. Nov. 4, 2025); *Barghouti v. Clark*, No. C06-1094-RSM-MJB, 2007 U.S. Dist. LEXIS 10154, at *7 (W.D. Wash. Jan. 29, 2007) ("As indicated in the record, ICE has secured travel documents for petitioner from Jordan and the only thing preventing his removal is his Petition for Review and related stay of removal. Once the Ninth Circuit decides his appeal, ICE will remove or release petitioner."), *R. & R. adopted*, 2007 U.S. Dist. LEXIS 10155 (W.D. Wash. Feb. 12, 2007). Accordingly, Petitioner is unlikely to succeed on the merits of his *Zadvydas* claim.

Petitioner is also unlikely to succeed on the merits of his claims concerning his potential removal to a third country. Petitioner identifies no facts suggesting that he may be removed to a third country, other than the existence of Respondents' third-country removal policy. (*See generally* Mot. 7–10.) As Petitioner acknowledges, he has valid

7

Mexican travel documents, and Respondents have been successful in effectuating other removals to Mexico. (Pet. ¶¶ 33, 38.) Moreover, Respondents submit that they intend to remove Petitioner to Mexico and have not requested removal to any third country. (Velasquez Decl. ¶ 24.) At this stage, Petitioner's potential removal to an unspecified third country is speculative and not ripe for adjudication. Accordingly, Petitioner is unlikely to succeed on the merits of these claims as well. *See, e.g.*, *Morales Sanchez v. Bondi*, No. 5:25-cv-02530-AB-DTB, 2025 U.S. Dist. LEXIS 196639, at *10 (C.D. Cal. Oct. 3, 2025) (denying temporary restraining order where "Petitioner's fear of being removed to [an unidentified] third country" was "speculative and not ripe for adjudication"); *Uprety v. Bondi*, No. 2:25-cv-02443-JNW-MLP, 2026 U.S. Dist. LEXIS 13998, at *13 (W.D. Wash. Jan. 26, 2026) (declining to address third-country removal claim as unripe where "[t]he record show[ed] no steps toward third-country removal for Uprety specifically").

The Court declines to consider the other *Winter* factors. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) ("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three *Winter* elements." (cleaned up)).

///

IV. **CONCLUSION**

The motion is denied.

Pursuant to General Order No. 05-07, further proceedings on the merits of the petition are referred to the assigned magistrate judge.

**IT IS SO ORDERED.**

Dated: March 10, 2026

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE